Cubia, per
Nott, J.
That the Courts of Equity in this state have jurisdiction of cases of alimony is settled by the long practice of the Court. Prather v. Prather, 4 Desaus. Rep. 33. From necessity such diction must exist somewhere; and there is no tribunal in the state where it can be so well exercised as in that Court. It belongs to the Ecclesiastical Court in England; but we have no such Court in this state. And even in England, during the Revolution, when the Ecclesiastical Courts were shut up, the Courts of Equity took cognizance of such cases. 1 Madd. Cha. 386. In the exercise of this power, however, there is no little difficulty in determining the extent of the jurisdiction.
The first question presented in this case is, whether the complainant is entitled to alimony ?
In England, it appears that alimony is allowed only where a separation is decreed. And although our Courts of Equity have not the power to grant divorces, yét as the two subjects, “ divorce and alimony,” are inseparable companions in England, we must look to the causes of divorce, to ascertain the grounds on which alimony will be allowed. Sir William Scott (now Lord Stowell), in the case of Evans v. Evans, 1 Hagg. Rep. 39, which was an application for a divorce on the ground of cruelty, says, “ In the oldest cases of this sort which T have had an opportunity of looking into, I have observed that the danger of life, limb, or health(1) is usually inserted as *206 the ground on which the Court has proceeded to a separation. This doctrine has been repeatedly applied by the Court in the cases that have been cited. The Court has never been driven off this ground. What merely wounds the mental feelings is, in few cases, to be admitted, where they are not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion (if they do not threaten bodily harm) do not amount to legal cruelty.”
What merely wounds the mental feelings is in few cases sufficient, where not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manners, rudeness of language or want of civil attentions, or sallies of passion, do not amount to legal cruelty.
The wife should not enter into a contest of retaliation, if she wishes the aid of the Court.
Words of menace importing actual danger will justify the interposition of the Court.
The same learned Judge, in the case of Oliver v. Oliver, 1 Hagg. Rep. 364, says, “words of menace, importing actual danger of bodily harm, will justify the interposition of the Court, as the law ought not to wait until the mischief is actually done. But the most innocent and deserving woman will sue in vain for its interference for words of mere insult, however galling; and still less will that interference be given, if the wife has taken upon herself to avenge her own wrongs of that kind, and to maintain a contest of retaliation.”
And it appears to me, that our Courts have hitherto acted upon the same principles. The case ofJelineauv. Je-lineau, 2 Desaus. Rep. 50, appears to be the first reported case which occurred in our Courts. The evidence in that case is not so fully reported as to give us a very distinct view of the facts. It appears however from the decree, that the husband had never used personal violence towards his wife, but he had threatened to do so; and had in other respects treated her in a cruel and brutal manner. And words of menace, importing actual danger of bodily harm, will justify the interposition of the Court. The cases of Prather v. Prather, 4 Desaus. Rep. 33, Duvall v. Duvall, 4 Desaus. Rep. 444, Taylor v. Taylor, 4 Desaus. Rep. 165, and Threewitz v. Threewitz, 4 De-saus. Rep. 569, all are cases of personal ill usage. The *207 ease now before us, furnishes no such ground for the interposition of the Court. No personal violence has been used, no harsh language indeed, nor unkind treatment, which the complainant has not brought upon herself by her own improper conduct. This Court, therefore, concur with the Chancellor, that the complainant did not make out a case for alimony.
English courts*^will^al decree resti-S ae’sdte”0*
quaire> ¡f a MUforrestitu-entertained in state ?
Desertion or abandonment a good ground for alimony in state‘
This brings us' to. the question submitted by the defendant, to wit, whether the Court ought not then to have dismissed the bill.
In England actual desertion or abandonment of the wife by the husband (except in particular cases) will not be a ground for alimony, unless accompanied with cruelty, 1 Consist. Rep. 120. But the Court will grant a restitution of conjugal rights. That Court has the power, and will compel the husband to take the wife back and to treat her with kindness. But in those cases there is no such alternative provision as is made in this case; for that would leave it optional with the husband whether to perform the decree or not. The Court therefore decrees tion unconditionally, and will compel obedience to its decrees. If the Chancellor intended this as a decree of restitution. there ought to have been no alternative. But it does not profess to be such, and I do not know a power has ever been exercised by the Court of Equity in this state. I am disposed to think, however, that a bill for that purpose would not be entertained. I therefore presume that desertion or abandonment of the wife the husband would be a good ground for alimony, contrary to the English, rule. There must be some method ii-iiii ‘ by which the husband may be compelled to maintain his wife; and when restitution of conjugal rights cannot decreed, alimony must. And even in England where the abandonment is such that the party cannot have relief in the Ecclesiastical Court, the Court of Equity will interfere. And therefore in the case of Colmer v. Colmer *208 et al. Moseley, 119, where a husband had left the kingdom and gone to the state of Maryland, having- first made a fraudulent assignment of all his real and perso-na-l estate in trust to pay his debts, the Court decreed the wife a maintenance out of it.
as*to rest¡tu°n tion will not on a bill for alimony.
that will not avail the complainant in this case; for it was proved and so expressly stated in the decree, that the departure of the wife was voluntary. But if the Court actually possessed the power to decree a restitution of conjugal rights it could not be exercised on this occasion. It must be on á bill brought expressly for that purpose. > Lord Stowell, in the case of Evans v. Evans, which was a case for a divorce, adverts to a case for restitution of marital rights, and says, “the monition is not only that he shall take her back, but that he shall treat her with conjugal kindness.” Yet in a subsequent sentence, a few lines below in the same case, he says, “ it is a mistake to say that in the present suit I can issue a monition to either party to return. This suit can lead to no such sentence.” And in the conclusion of his opinion (p. 129), after having made several pertinent observations upon the. reciprocal duties of husband and wife, he says, “ but in taking this review I rather digress from my province in giving advicé. My province is merely to give judgment, to pronounce upon what I take to be the result of the facts laid before me.” His Lordship therefore concluded with dismissing the parties. Lord Hardwicke, in the case of Head v. Head, 3 Atk. 547, has in his decree made terms somewhat similar to those made in the decree now under consideration. But that was on a bill brought by the wife for the arrears of an annuity which the husband agreed to pay during their separation. The husband agreed to receive her back again. The Lord Chancellor decreed that the annuity should cease upon his receiving her back; and maintaining and treating her as his wife j *209 otherwise that it should continue. But that was merely requiring his promise to be performed with good faith, as a condition upon which he should be exempt from paying the annuity. If the defendant was now asking to be relieved from paying alimony upon receiving his wife back, whom he had driven from his house, such a condition might be proper. But the Chancellor has decreed, and this Court concur with him, that the complainant is not entitled to alimony 5 and that was the only question submitted to the Court. The complainant does not ask her husband to take her back. She does not appear to wish it. On the contrary, her object was to provoke him to turn her out of his house. But as she could not bring him up to such a pitch of excitement, she concluded to abandon it herself.
Jurisdiction g°”nting Ai-mo“y»and t0 such orders as are necessary ü0*of sud^á decree.
A1¡mony ig usually aiiow-ed till the husband will jjfc^his^wffe and treat her with conjugal affection.
I am of opinion, that the jurisdiction of the Court must be limited to the allowing of alimony; and to such orders as are necessarily incident to the effectual execution J of such a decree.
Alimony is usually allowed until the husband shall agree to take his wife back, and treat her with conjugal affection. Whenever the husband professes to have complied with those terms, and comes to be relieved „ ,. ,. , . from the payment oí alimony, the Court wifi grant the relief only upon his faithfully performing the condition, In those cases, and those only, can the Court impose the ' . . , terms made m this decree.
All that part of the decree, therefore, (after declaring that a case has not been made out to justify the Court to give the relief demanded) must be reversed. That part of the decree, which refuses the complainant the relief demanded, is affirmed. The bill is therefore dismissed.

Decree modified.

 In this case it seemed the husband was in danger both of limb and health.